Jr. Oral argument, 15 minutes per side. Mr. Oza for the petitioner. Morning, judges. Morning. As a preliminary matter, I'd like to reserve three minutes for rebuttal. Okay. Judges, there are two basic issues before the court today.  The first issue is whether or not the Board of Immigration Appeals required the petitioner in the matter to meet a higher burden of proof with respect to being able to prove that his marriage with his U.S. citizen spouse was a bona fide marriage in order to remove his conditional resident status. And the second issue before the court is whether or not the Board of Immigration Appeals correctly determined that the petitioner was ineligible for cancellation of removal under INA 240A, subsection A. And I'll be addressing these matters in order, and obviously if the court has any questions, feel free to ask when I'm presenting. The first issue, judges, whether or not the Board of Immigration Appeals correctly determined the petitioner to have, did they ask him to meet a higher standard of proof in removing his conditional residency status. Now, as a preliminary matter, whenever an individual is granted conditional resident status, that person gets that status by being married to a U.S. citizen for a period of less than two years. So if you're married to a U.S. citizen, the marriage is less than two years, you're automatically given conditional residency status by the Immigration Service. And before that status expires, you're required to file a Form I-751 with the service to remove those conditions. And the purpose of that form is to ensure that the marriage is bona fide. And in filing that form, there's a couple of different ways in which to file. The most standard way is to be married and file jointly with your spouse and include evidence of your bona fide marriage, such as shared residency, shared financials, affidavits, proof of a shared life together. If you're no longer married, there is a waiver of that joint marriage filing, and there's three types of waivers. A good-faith waiver once you're divorced, battery, or extreme hardship. The latter two aren't at issue today. So what is at issue today is whether or not the board required the petitioner to meet a higher standard of proof in proving his marriage was bona fide. And, I mean, you say that you're talking about the board as opposed to the IJ at this point? The board and the IJ. Are we just looking through, really, to the IJ? Correct, Judge. And, I mean, just to bring this into focus, you say that the board, let's just call it the board, held your client to a higher standard of proof because, what, they discounted the import of some of the financial documents about shared accounts? I want to sort of itemize specifically what it is you say they did that amounted to this higher burden. So the regulations outlined at 1216.4 provide a list of the different types of evidence that are required to be submitted. And in reviewing what the record of proceedings indicate, the record fairly clearly shows that the petitioner supplied all of the things that are required. That doesn't mean the board has to draw from those records the inference that you want them to draw. I'm sorry, Judge? The fact that your client submitted documents that were in the categories enumerated in the reg. Correct. Does not mean the board is required to draw from them the inference that you would have them draw. In some cases, they might be compelling. In others, the board might say, you know what, this just really isn't very compelling, and that is what they said here. And understandably so. So the issue before this court isn't a review of the factual determinations. Right. I guess what's wrong with the board discounting the stuff that your client came forward with? The board is free to do so. But ultimately, if the regulations indicate that X, Y, and Z are required. Right. It doesn't say you win if you have X, Y, and Z. It doesn't necessarily mean that you win, but if X, Y, and Z are submitted, and those documents comport with what the regulations require, then requiring documentation above and beyond that would seem to be requiring a higher standard of proof other than a preponderance. I mean, if the reg said, you know, it shall be an adequate basis to establish hardship or, in this good faith, if the alien presents documents of the following types, and he does, and they say, well, actually not good enough, then you'd have something. But this is almost like a floor, you know, or at least these are just general categories that you need to come up with. It doesn't say you win if you come up with them. Agreed. But if you look at what the regulations require, proof of shared residence, for example. In this matter, a lease was submitted, as well as a mortgage. Proof of shared financials. Three credit cards they had together, a bank account they had together, jointly filed taxes for a period of five years. Affidavits. He had credible testimony from a witness. His employers indicate that he was married. Insurance documents indicating that he had shared insurance. Health, dental records or documentation showing they had shared life experiences, such as photographs. Those are what the regulations require. It sounds like what you're telling us is the board put an improper amount of weight on these things. Well, in looking at this through a substantial evidence test, we would assert that the court is compelled to have a different finding. These are what's required. Notwithstanding, you know, some of the other facts in this case, the court is compelled to find that the board was compelled? Really? Well, what I would say is that we start from the premise that the marriage was flawed because ultimately it resulted in divorce. And I don't think anybody's going to argue that point. But ultimately, did he meet his burden in terms of showing a preponderance? Perfection isn't required, but a preponderance is what his standard is. And the evidence supplied, would it meet that standard? We would argue that it does. You're not certainly suggesting there's no contrary evidence to the position asserted by your client. You're not saying that? We're not saying that there's evidence in the record that is disfavorable. There certainly is. The fact that his U.S. citizen spouse had children outside the mirrors that weren't his is obviously a factor that should be considered. Again, we're not starting from the point of perfection. It wasn't. Were there not other factors that would weigh against his position? You've referenced mortgages. But as I recall, there was some quick claim or a nominal interest of these other two spouses. And as to an affidavit from the friend who visited the house that the judge found that that person had only been there a couple times and seen the couple in very limited circumstances. So as both my colleagues have said, there was evidence from which the immigration judge or the BIA could find the petitioner not as credible as he is arguing that he is. And very good. And again, if the issue is simply a matter of weight or credibility, those things are determinations held solely by the judge and the board. But under a substantial evidence standard, we would say that the evidence does warrant a fine that his marriage was bona fide. And I guess you agree that there's no place in the record where the board or the immigration judge actually articulates a higher standard than preponderance of the evidence. You're just saying that based upon the evidence that you think that happened here. That would be correct. The judge nor the board specifically said that this case is being subject to a higher standard of proof. The second issue, which is before the court, which is actually more novel and appears to be a case of first impression, is whether or not a conditional resident during the course of removal proceedings is eligible for cancellation of removal. Now, cancellation has a three-part test. At the time of application, you must have been a green card holder for at least five years. You must have been a continuous resident in the United States for at least seven years. And you cannot have been convicted of an aggravated felony. Now, those latter two requirements aren't an issue. The petitioner never committed a crime. He had been a resident in the United States at the time of application for over seven years. The question is that the time he applied for a cancellation removal before the immigration judge, which was in 2010, was he a permanent resident? And we would assert that he was. Now, the board and the immigration judge actually gave different rationales as to why he would not be considered a permanent resident. The board essentially asserted that by USCIS terminating his conditional resident status and sending him over to see an immigration judge, that automatically terminated his status. Now, that is erroneous for a couple of reasons. One, under the CFR 1001.1p, the CFR makes clear that conditional residency status is only terminated upon a final administrative determination with respect to exclusion, rescission, deportation, or removal. Removal doesn't say only. I mean, your reading, I grant you, has some appeal as a natural one, but it doesn't expressly say only. Well, it doesn't expressly say only, but it does make clear that in those four circumstances when there's a final administrative order. In those four circumstances, USCIS does not have the authority to issue a final administrative finding with respect to exclusion, rescission, deportation, or removal. In this case, removal. Removal is defined under 8 CFR 1241.1, which specifically says the order is final upon a dismissal of appeal by the Board of Immigration Appeals. The Board of Immigration Appeals did not dismiss the case until February of 2014. The petitioner in this matter was granted permanent residency status in 2002. From 2002 to 2014, he must have been a permanent resident. It couldn't be any otherwise. And logically, this also makes sense. In 2008 is when his joint filing with his wife was terminated by USCIS. Terminated. He thereafter filed a removal of conditions application as a good faith waiver. That was also terminated in 2009. Now this creates a problem. How can his conditional residency status be terminated twice? It can't. His status maybe before the service could arguably have been terminated, but during the course of removal proceedings, he continued to have permanent residency status. And this is outlined a couple of different ways. One, through policy memoranda from the service, which made clear that during the course of removal proceedings, he is to be granted permanent residency status. He had stamps in his passport, which are provided at Exhibit 2 of the opening brief, that show that in 2012, 2013, 2014, he was granted permanent residency stamps. That would make sense that he was a permanent resident at the time. Let me ask you. I understand your points, but how do you reconcile your argument with 1186AC3C, which says if the service determines that the petitioner didn't marry in good faith, which they did determine here in September of 2008, the statute says that his permanent resident status is to be quote unquote terminated as of the date of the service's determination, which was in 2008. At the end of the day, doesn't the statute trump stamps and regulations? Well, it's a function of having a court review the determination of the service. Because there's no appeal of it at I-751 before an administrative body, the only way of getting him in front of an immigration judge is to quote unquote terminate his status. But again, how can his status be terminated multiple times? It can't. And during the course of proceedings, how can he maintain his permanent residency if his status was in fact terminated, that he could never ever get a good faith waiver because there's no status to waive. So he had to have been maintaining status during the course of removal proceedings, because otherwise a judge would have been unable to remove any conditions. There was no status there to remove the conditions of. Secondly, coulomb and tangy is used, and I'll save the remainder for rebuttal. Thanks, Joe. May it please the court. I'm Cyril Brady for the Attorney General. I'd like to slightly restate the issues before the court. The first issue is not whether the board applied a preponderance of evidence standard higher than that required by law. It is whether in fact the court has jurisdiction over the determination that petitioner was not entitled to a good faith waiver. We submit that both by the precedent of this court and two statutes, the court does not have jurisdiction because the immigration judge and the board determined that petitioner's evidence was not creditable and was not entitled to sufficient weight. Under the first statute, in Title 8, 1186A, Section C4, that provides that the credibility and weight of evidence regarding a petition to remove waivers is committed to the sole discretion of the Secretary of Homeland Security. The second statute, also in Title 8, in 1252A2C, Subsection 2, provides that any decision committed to the Secretary of Homeland Security's discretion is not reviewable by a court. We submit that those two statutes in tandem, as this court ruled in the Johns decision in 2012, means that the court does not have jurisdiction to review the board's determination that petitioner did not carry his burden for a good faith waiver. I thought in Johns we said we do have jurisdiction to do our pretty routine substantial evidence review, albeit it would appear a fairly meaningless review if we can't address the weight that the board has. That's correct, Your Honor. John said both things. It said primarily the primary focus of the decision was the lack of jurisdiction based on the two statutes in tandem. It did, though, say that for any credible evidence, the court could apply its substantial evidence review. We submit that the only evidence that the board found credible in this case had to do with the testimony of petitioner's witness, Mr. Hill from Canada. However, the board determined that that evidence wasn't entitled to sufficient weight to carry petitioner's burden. So even with substantial evidence review of that limited portion of the record we submit, the overarching consideration is the lack of jurisdiction for the primary ruling made by the agency, and that is the lack of credibility and the lack of weight that the evidence could be given. I'm glad you clarified that, though, because the way you started it out, it sounded like you thought we had no role at all in regard to this issue. That's right, but it would be as to just the limited evidence, as I say, that was potentially deemed credible, but it was a very limited weight in the case itself. The Johns decision also cites five other courts of appeals decisions that have ruled that the two statutes in tandem divest the court of jurisdiction. There's no need for me to repeat those decisions here, but also in an earlier ruling in 2012, the Osei case, this court came down the same way, ruling that the two statutes divest the court of jurisdiction, and then later in 2014 in an unpublished decision, the Singh decision, the court also held consistently. So there's really no tension in the court's decisions regarding the interplay of the two statutes regarding jurisdiction in this case. What about the second issue? In the second issue regarding cancellation of removal, we submit that the issue there, we agree that the issue is whether Petitioner had been admitted as a lawful permanent resident for at least five years prior to his cancellation of removal application in 2010. We take the position that he was not admitted for lawful residence because his lawful residence status depended on his marriage to a United States citizen in 2002, and the board ruled that that marriage was not entered into good faith. So the determination under the matter of Kolamantangi would be that that marriage was void ab initio, meaning at no time did it provide Petitioner with permanent resident status. And we submit that the court should give deference to the board's interpretation in Kolamantangi of the meaning of lawfully admitted. But in that case, there was a fraud finding, wasn't there? There was a fraud finding. This is quite different. I mean, you know, it's one thing to say to have an affirmative finding of fraud. It's quite another to say the Petitioner simply hasn't met his burden of establishing good faith. I mean, those are two quite different things. But the initial observation has to be, at the time the person was granted permanent status, was he entitled to it? And we submit that that's where this case has to fall. That's a different level of generality than this whatever case just describes. Kolamantangi did, in fact, hinge on a fraudulent marriage. However, it discusses other cases for the proposition that the status is looked at from its initiation at the beginning, whether or not the person acquired permanent resident status, irrespective of how that status was, in fact, granted. But aren't those cases, as my colleague suggests, quite different than this case? In Shin v. Holder, you had a situation where a parent had a fraudulent visa. Therefore, the applicant therefore necessarily could not have qualified. You have another case, Seguro v. Holder, dealing with a felony conviction. And Kolamantangi, we're talking about someone who was married. So therefore, you could not have qualified. So aren't all these cases different, as my colleague suggests, than this case, where you're simply trying to determine, based on factual evidence, whether a person meets a particular standard? Respondents submits respectfully that the issue, though, is whether the lawful permanent resident status was a fiction when it was granted. Whether it be through fraud or, I believe, in the Seguro case, it was inadvertence. The agency wasn't aware of the conviction. It wasn't a matter of the petitioner actually concealing the fact of the conviction. And if the person could not have qualified for the status, the person would not be entitled to it, irrespective of the inadvertent admission as a lawful permanent resident. And we submit that that is the broader issue that Kolamantangi stands for, not merely it. The Kolamantangi decision discusses that the admission has to be both procedurally and substantively correct. And we submit that procedurally, petitioner was admitted as a lawful permanent resident. However, substantively, he was not entitled to it because the marriage was not a good faith marriage. The entire scheme for the petitions and for the waivers for removing conditional permanent residents have a retrospective application, if you will. They have to look back and say, at the time the status was granted, was it in fact lawful? And that's where we submit that it was not, because petitioner's marriage was not entered into good faith. Well, let's say we're not entirely persuaded by that rationale. What would your response to Mr. Oza's argument about the regulation, namely Section 1001.1, be? It seems like a pretty natural reading of that reg, doesn't it? Regulation, though, has several conditions within it. It's not just that the person had been lawfully admitted, but that the admission had been in accordance with law. We submit in this case that... Back now to the first argument on that one? We have to, because it's a retrospective application. It has to be. Because that's the way this whole statutory scheme works. Let's say we're reluctant to engage, to sort of import ex parte young type fictions to this area. I mean, let's just, I want to talk about this part from the first argument altogether. Where do you go from there, as to the second issue? We submit respectfully that there is no separate argument, because it has to be whether or not, at the time the marriage was entered into, it was entered into in good faith. How about, let's say, hypothetically, I disagree with that argument. What would you then say? If you disagree with that argument, we'd have to say then that we don't see a basis, nonetheless, for holding that this marriage was substantively entered into in good faith for giving him lawful permanent residence status. There's no getting around the retrospective application. The whole way the statutory scheme is set up, that initially, upon basis of a marriage, a person is granted conditional permanent residence status, but that is only conditional, meaning there will come a time when the agency has to perform its due diligence and determine, was that entered into in such good faith that we can remove that condition and concede that the person was granted lawful permanent residence status. But isn't the whole process, when you look at that, to see whether you remove the status? In other words, it's a two-fold process. The marriage, the person then becomes conditionally a resident, and then at some point, there's a review of that, or in certain different contexts. So wouldn't it make the first step meaningless? It just seems like it wants to sweep away, you want to sweep away everything that occurs before. But isn't the process where you look at the conditional status to see whether it should become permanent, isn't that another step in the chain as opposed to looking back at the inception? I'm having some concern here. It is, but I think, though, if we consider the way the statute is written, that it is conditional permanent residence status. That assumes, then, that something else is going to happen to determine whether or not the condition can be removed. The cases that the board has relied on in terms of good faith marriages always determine that you can look at conduct after a couple is married to decide whether or not they entered into that marriage at the outset in good faith. And we submit, for that reason, you have to perform that analysis, and it allows that analysis to say that at the onset of this marriage, the parties did not intend to commit their lives together, and therefore, it wasn't a good faith marriage, meaning it could not confer lawful permanent residence status. The reference in 1001 to the status of having been lawfully accorded the privilege of residing permanently, does that include, does that encompass persons like this petitioner who are conditionally admitted as a lawful permanent resident? Yes, because the reg also says such status not having changed, and in petitioner's case... Well, I mean, it says such status not having changed, and then in the next sentence, it describes when the status can terminate. So, is the change we're talking about different from termination in the new regulation? Yes. Is it in the next sentence? It is, and as the regulation discusses, the way that regulation was written, if you will, initially it had the status not having been changed, and in accordance with law. It later, for circumstances that are not present in this case, added the provision, it ends upon the issuance of a final removal order, but that it does not change the antecedent sections of the regulation that require that it had been in accordance with law and the status not having been changed. I guess, what's the difference between the change that's referred to and not having changed and termination? Are those two different, I mean, in concrete terms, are those two different things, and if so, how? They are two different things. One can contemplate a situation where a petitioner was granted conditional permanent resident status, had permanent resident status, and then was issued a removal order. Obviously, his status would terminate, but this has a separate intervening event, if you will, and that is the determination by the agency that the regulation, that his marriage was not entered into good faith, and they terminated the conditional resident status we'd submit. Is the changed, do you think, is that speaking specifically to persons who are conditionally admitted as lawful permanent residents? I don't have any legislative history, if you will, or regulatory history to show that that was the meaning, but taking the language in its reasonable interpretation, it certainly would apply to that situation. Has the board or any agency said anything to that effect, do we know? I'm not aware of a decision concerning that language. I'm not. Finally, we would just submit, then, for the reasons we said, though, that the court is bound to give deference to the interpretation in Kolem and Tangi, and that means that there had to have been both a procedural and a conditional residence, and not merely that in the case of a conditional residence, such as Petitioner had. Hearing no further questions, then we submit. Thank you. Thank you, Ms. Brady. Thank you, judges. I just wanted to discuss the latter issue in further detail. A couple of points were raised during the government's argument with respect to statutory eligibility. The government essentially asserts that at the time the petitioner was initially granted permanent residency status in 2002, he wasn't a conditional resident at all, because ultimately he was unable to meet his burden of proof. The problem with that logic is that it equates the petitioner's inability to meet his burden of proof to the same as a sham. It divests DHS of any burden. We understand that argument. And I think fundamentally that's the issue here. What about Ms. Brady's point just a moment ago, though, that reference to such status not having changed might be referring to different changes, i.e., rescission of a conditional status, then termination of lawful permanent resident status, say, for somebody who might have been here 20 years or something, who's not in this marriage situation? And that, I guess, certainly is a possibility. But the statute allows for rescission proceedings. So ultimately, if the Immigration Service concluded that the petitioner's marriage was fraudulent from the outset, the service could have initiated a process in which to rescind his status from the very outset under INA 246. But we seem to be focused on this sort of outset stuff. I mean, what I'm suggesting is one could read this reg, or at least I think Ms. Brady makes an argument that needs to be taken seriously, is read this reg to say, okay, this business about changed, no changes, that's saying no rescission of conditional status. This business about lawful permanent resident status terminates upon entry of a final administrative order of removal, that's talking about somebody who's not, doesn't have a conditional status and is being, you know, let's say they're a lawful permanent resident and they get convicted of an aggravated felony 15 years later. Sending that person out of the country is a different type of proceeding than rescinding conditional status. So these references are to two different things. And sure they might be, but ultimately the question is that at the time he applied for cancellation, was his status intact? And so while the service terminates his status before the service, that doesn't essentially mean that he no longer has status before an immigration court because again, it goes back to this idea of just fundamental logic. If he has no conditional residence before an immigration judge, then there's no conditional residency status to remove. Then the whole purpose of the immigration courts are moot because there is no status. So he has to have the status intact before the immigration judge, before the Board of Immigration Appeals because if he doesn't, then there's no conditional residency status that he could ultimately have withdrawn. Okay. Apparently not. Thank you very much Mr. Oza and thank you Ms. Brady, both of you really for your arguments today on a very interesting set of issues. The case will be submitted and Ms. Perk may call the next case.